IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| TINA B.,[1] | ) | |
|     Plaintiff, | ) | Civil Action No. 3:19-cv-00074 |
| | ) | |
| v. | ) | REPORT & RECOMMENDATION |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | By:   Joel C. Hoppe<br>        United States Magistrate Judge |
|     Defendant. | ) | |

Plaintiff Tina B. asks this Court to review the Commissioner of Social Security's final decision denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). Having considered the administrative record, the parties' briefs, and the applicable law, I cannot find that the Commissioner's final decision is supported by substantial evidence. Accordingly, I respectfully recommend that the presiding District Judge reverse the decision and remand the case under the fourth sentence of 42 U.S.C. § 405(g).

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, a court reviewing the merits of the Commissioner's final decision asks only

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

1

whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review considers the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her

2

residual functional capacity; and, if not (5) whether he or she can perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. § 404.1520(a)(4).[2] The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

In August 2015, Tina filed for DIB alleging that she was disabled by a torn rotator cuff, plantar fasciitis, arthritis, high blood pressure, diverticulitis, depression, and anxiety. *See* Administrative Record ("R.") 113, 215–18, 238, ECF No. 10-1. Tina was fifty-two years old, or a "person closely approaching advanced age" under the regulations, when she stopped working on April 1, 2015. *See* R. 113–14, 234, 239; 20 C.F.R. § 404.1563(d). Disability Determination Services ("DDS"), the state agency, denied her claim initially in November 2015, R. 112–24, and upon reconsideration in July 2016, R. 125–35. On September 28, 2017, Tina appeared with counsel and testified at an administrative hearing before ALJ Karen Robinson. *See* R. 79–111. A vocational expert ("VE") also testified at this hearing. R. 100–11.

ALJ Robinson issued an unfavorable decision on March 23, 2018. *See* R. 57–71. In May 2019, the Appeals Council ("AC") granted Tina's request to review that decision because her case presented "a broad policy or procedural issue that may affect the public interest." R. 211; *see* R. 4 (noting that Tina's request "raised a challenge under the Appointments Clause of the Constitution, U.S. Const. Art. II, § 2, cl. 2, to the manner in which the [ALJ] was appointed"). Thus, a panel of two Administrative Appeals Judges ("AAJs") planned to vacate ALJ Robinson's

---

[2] Unless otherwise noted, citations to the Code of Federal Regulations refer to the version in effect on the date of the ALJ's written decision.

3

written decision and "conduct a completely new review" of Tina's file before either remanding the case to a different ALJ or "issu[ing] their own new, independent decision" on the merits. R. 212 ("[T]he AAJs will not presume that the prior ALJ's decision was correct and will not give it any weight.").

On October 3, 2019, the AC, acting through AAJs Ronald Rogers and Tina Waddell, vacated ALJ Robinson's decision and issued a new decision finding that Tina was not disabled between April 1, 2015 and March 23, 2018. R. 4–5; *see generally* R. 4–20. At step one, the AC found that Tina engaged in substantial gainful activity ("SGA") from April 2016 through June 2016, but that there was "a continuous 12-month period(s) during which [Tina] did not engage in SGA." R. 7. Its remaining findings addressed those periods when she did not engage in SGA. *Id.* (finding that Tina did not engage in SGA when "she was helping her brother in law from December 2016 until June 2017"). Tina had the following "severe" impairments: "left shoulder degenerative disc disease, left elbow tenosynovitis, left foot plantar fasciitis, and obesity." R. 7; *see* R. 8, 13 (finding that Tina's "weight of 244 pounds and height of 5 feet and 2 inches, which calculates to a body mass index (BMI) of 44," qualified as "morbid obesity" (citing R. 238)). Her other medical conditions—including "chronic colostomy [bag use] status post colectomy for diverticulitis" and right shoulder pain—were non-severe impairments during the relevant time. R. 8–9. Tina's severe impairments did not meet or medically equal the relevant Listings. *See* R. 11–12 (citing 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 1.02, 14.09).

The AC then evaluated Tina's residual functional capacity ("RFC") based on all her medical impairments. *See* R. 12–18. It found that Tina could perform "a range of medium work," including "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weight up to 25 pounds" and standing/walking about six hours in an eight-hour workday, R. 12,

4

13 (citing 20 C.F.R. § 404.1567(c)), except she was "limited to occasionally climbing ramps, stairs, ladders, ropes, or scaffolds; frequently balancing; [and] occasionally stooping, kneeling, crouching, and crawling," R. 12.[3] She could "occasionally push/pull, overhead reach, and handle with the left upper extremity" and tolerate "occasional exposure to workplace hazards." R. 12. The restrictions on Tina's left arm meant that she could not return to her past work as a warehouse worker or hand packager. R. 17–18; *see* R. 102–03. Considering her RFC, age, education, and work history, however, the AC found that Tina could transition to other less-demanding "medium" occupations (rural mail carrier, "stubber,"[4] dump-truck driver) that offered a significant number of jobs in the national economy. R. 18–20; *see* R. 82, 84–85, 102–04; 20 C.F.R. pt. 404, subpt. P, app. 2 §§ 203.11, 203.18). Thus, the AC concluded that Tina was not disabled from April 1, 2015 through March 23, 2018. R. 5, 20. The AC's written decision is the "final decision of the Commissioner" denying Tina's claim for disability benefits. R. 1.

### III. Discussion

Tina's arguments challenge the AC's finding that she could do "medium" exertion work on a regular and continuing basis. *See generally* Pl.'s Br. 6–17, ECF No. 14; Pl.'s Reply 1–5, ECF No. 18. I agree that the AC "failed to build an accurate and logical bridge from the evidence [it] recounted" to its conclusion about Tina's exertional abilities, *Woods v. Berryhill*, 888 F.3d

---

[3] "'Frequent' [or 'frequently'] means occurring from one-third to two-thirds of the time," or about six hours during an eight-hour workday. SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). "'Occasionally' [or 'occasional'] means occurring from very little up to one-third of the time" and "should generally total no more than about 2 hours of an 8-hour workday." *Id.* at *5; *see also* R. 13.

[4] A stubber "[r]emoves sales-slip stubs from packages at loading dock and sorts stubs, according to size of package or type of merchandise, to keep record of store deliveries," "[r]eturns illegibly addressed or mutilated packages for rewrapping or readdressing," and tallies the "number of stubs at end of day" to prepare reports. This work involves "frequent" reaching and handling and a "significant" amount of handling objects or things. 222.687-034 Stubber, 1991 WL 672136. The AC found that there were 4,000 stubber jobs available for someone limited to "occasional" pushing, pulling, reaching overhead, and handling with the left arm. *See* R. 19 (citing R. 102–04).

5

686, 694 (4th Cir. 2018), and did not adequately explain why it rejected three physicians' medical opinions that Tina should be restricted to "light" exertional work. *See* Pl.'s Br. 8–15; R. 16–17 (citing R. 119–20, 134); 20 C.F.R. § 404.1567(b). Thus, "because [I] cannot gauge the propriety of the . . . RFC assessment, [I] cannot say that substantial evidence supports the [AC's] denial of benefits" in this case. *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 662 (4th Cir. 2017).

\*

A claimant's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting" for eight hours a day, five days a week despite her medical impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at \*2 (July 2, 1996) (emphasis omitted). The Commissioner "has specified the manner in which an ALJ," or, in this case, the AC, "should assess a claimant's RFC." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). First, because RFC is by definition "a function-by-function assessment based upon all of the relevant evidence of [the claimant's] ability to do work related activities," SSR 96-8p, 1996 WL 374184, at \*3, the AC must identify each impairment-related functional limitation that is supported by the record, *see Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016). The RFC should incorporate specific, credibly established "restrictions caused by medical impairments and their related symptoms," including pain, that affect the claimant's "capacity to do work-related physical and mental activities" on a regular and continuing basis, SSR 96-8p, 1996 WL 374184, at \*1, \*2. *See Mascio v. Colvin*, 780 F.3d 632, 637–40 (4th Cir. 2015); *Reece v. Colvin*, 7:14cv428, 2016 WL 658999, at \*6–7 (W.D. Va. Jan. 25, 2016), *adopted by* 2016 WL 649889 (W.D. Va. Feb. 17, 2016). Second, the AC's decision must include a "narrative discussion describing" how specific medical facts and non-medical evidence "support[] each conclusion" in

6

the RFC assessment, SSR 96-8p, 1996 WL 374184, at *7, and logically explaining how it weighed any conflicting or inconsistent evidence in arriving at those conclusions, *Thomas*, 916 F.3d at 311. Generally, a reviewing court will affirm the AC's findings when it considered all the relevant evidence under the correct legal standards, *see Brown v. Comm'r of Soc. Sec. Admin.*, 873 F.3d 251, 268–72 (4th Cir. 2017), and built an "accurate and logical bridge from that evidence to [its] conclusion[s]," *Woods*, 888 F.3d at 694. *See Thomas*, 916 F.3d at 311–12; *Patterson*, 846 F.3d at 662–63.

      The AC's written decision does not satisfy this deferential standard of review. The AC concluded that Tina "could perform 'medium work' and summarized evidence that [it] found credible, useful, and consistent," *Woods*, 888 F.3d at 694. *See* R. 14, 17 (citing Exs. 1F, 2F, 3F, 5F, 7F, 12F). But it never logically "explained how [it] concluded—*based on this evidence*—that [Tina] could actually perform the tasks required by 'medium work,' such as lifting up to 50 pounds at a time, frequently lifting or carrying up to 25 pounds, or standing or walking for six hours," *Woods*, 888 F.3d at 694. *See* R. 13–14, 17. The decision's vague references to Tina's "course of treatment, her statements during treatment, and objective findings"—including Tina's comment that she could not lift a gallon of milk and treatment notes showing "decreased" range of motion and strength and "mild/moderate degenerative changes" in her left shoulder, R. 14 (citing Exs. 1F, 5F, 12F)—do not explain how the AC concluded that Tina could lift up to fifty pounds, and frequently lift/carry twenty-five pounds, for eight hours a day, five days a week, *Woods*, 888 F.3d at 694–95 (reversing where ALJ summarily adopted reviewing physician's opinion "that Woods could lift up to 50 pounds (something none of her treating physicians believed she was capable of), but [the physician] failed to explain *how* he arrived at that specific number"). *See Thomas*, 916 F.3d at 311. "The [AC] therefore failed to build an accurate and

7

logical bridge from the evidence [it] recounted to [its] conclusion" about Tina's exertional RFC. *Woods*, 888 F.3d at 694.

Second, substantial evidence does not support the AC's reasons for rejecting three medical opinions that Tina *could not* lift twenty-five pounds, and therefore should be restricted to "light" work. *See* Pl.'s Br. 8–15; R. 16–17 (citing R. 119–20, 134); 20 C.F.R. § 404.1567(b). ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."). "Medical opinions" are statements from "acceptable medical sources," such as physicians, that reflect the source's judgments about the nature and severity of the claimant's impairment, including her symptoms, prognosis, functional limitations, and remaining abilities. 20 C.F.R. § 404.1527(a)(1). The AC must adequately explain the weight afforded to every medical opinion in the record, taking into account the nature and extent of the source's treatment relationship with the claimant; how well the source explained or supported the opinion; the opinion's consistency with the record as a whole; and whether the opinion pertains to the source's area of specialty. 20 C.F.R. § 404.1527(c). The regulations "accord[] the greatest weight" to medical opinions from the claimant's "treating" physician and require the AC to "give good reasons" for the weight afforded those opinions. *Brown*, 873 F.3d at 255–56 (quoting 20 C.F.R. § 404.1527(c)(2)). And, while the AC "is under no obligation to accept any medical opinion" when determining the claimant's RFC, *Michael B. v. Saul*, No. 7:19cv751, 2020 WL 7497803, at *7 (W.D. Va. Dec. 21, 2020), its specific reasons for rejecting the opinion must be legally adequate and supported by substantial evidence in the record, *Brown*, 873 F.3d at 268–69.

In November 2015, DDS reviewer Luc Vinh, M.D., opined that pain, decreased strength, and reduced range of motion in Tina's left shoulder limited her to lifting at most twenty pounds and frequently lifting/carrying objects weighing up to ten pounds. R. 119–20 (also noting

"limited" left overhead reaching); *see* R. 116. Robert McGuffin, M.D., affirmed Dr. Vinh's conclusion after reviewing Tina's updated records in July 2016. R. 132 ("Limitations in lifting and using left arm are noted in the medical evidence. Physical finding[s] are fair."); R. 134 ("[L]imited to light work with limitations on reaching overhead on the left."). In August 2017, Tina's treating physician, William Dandridge, M.D., similarly opined that Tina could rarely lift/carry twenty pounds, occasionally lift/carry ten pounds, and frequently lift/carry objects weighing up to ten pounds. R. 569. The AC rejected the physicians' strength limitations as "not consistent with the record as a whole," but gave different reasons depending on the source's treating relationship with Tina. *See* R. 16–17.

It found that the DDS opinions were "not consistent with" unidentified "[s]ubsequent medical records indicat[ing] little treatment for impairments," as well as evidence that Tina "work[ed] in 2016 and 2017." R. 16. Earlier in its decision, the AC found that Tina's "[w]ork activity included work" as a cashier from April to June 2016, and as "a home health attendant" for a relative from December 2016 through June 2017. R. 7, 14. Tina testified that both jobs required her to lift/carry about forty pounds, R. 86, 88, 101, and that chronic pain in her left shoulder and arm forced her to stop working after only a few months, R. 85–86, 88, 92. The AC appears to have accepted Tina's description of these temporary jobs in rejecting her allegations that she "cannot work" at all "due to her left arm and shoulder pain," R. 12. *See* R. 7, 13–14. The AC failed, however, to explain how it concluded that the DDS physicians' opinions restricting Tina to "occasionally" lifting at most twenty pounds, and "frequently" lifting/carrying only ten pounds, were "not consistent" with this evidence. Moreover, Tina's short-lived attempts to do work that required her to lift/carry at most *forty* pounds certainly do not support the AC's conclusion that she could routinely spend two hours during an eight-hour workday

9

lifting/carrying *fifty* pounds. *See* R. 14 ("To prevent exacerbations, she should be limited to medium work with only occasional pushing/pulling and overhead reaching and handling with the left upper extremity.").

The AC concluded that Dr. Dandridge's treating-source medical opinion was "not consistent with . . . records from September 2015 suggest[ing] that he filled out a paper . . . declaring that [Tina] was physically able to work," R. 17 (citing R. 490), because Tina's medical records did "not support a significant change in [her] condition from September 2015 to July 2016 (Dr. Dandridge's most recent treatment records)," *id.* (citing R. 530–46 (Ex. 7F)).[5] "This conclusion was not supported by substantial evidence because the record, when read as a whole, reveals no inconsistency between," *Hines*, 453 F.3d at 565, Dr. Dandridge's comment that Tina was "physically able to work" in September 2015, R. 490, and his later, more specific opinion that she could lift/carry at most twenty pounds, R. 569. *Cf. Schandel v. Comm'r for Soc. Sec. Admin.*, No. 4:14cv42, 2016 WL 3268758, at *3–4 (W.D. Va. June 7, 2016) (ALJ's conclusion that claimant's ability to do "volunteer work" contradicted his claim of "total debility" lacked any basis in the record where there was "no evidence whatsoever regarding what activities" claimant did while volunteering). Both statements show that Tina could do *some* work despite her pain and other symptoms related to degenerative disc disease in the left shoulder. *See* R. 490 ("She was fired from her job which is very physical, she was not able to perform the duties required. She is applying for unemployment. She brings a paper for me to fill out declaring that she is physically able to work. While working she did have difficulty with pain in her left shoulder. This has resolved."). Had the AC accepted Dr. Dandridge's opinion and limited Tina to light work, however, the Commissioner's regulations would have directed a finding that Tina

---

[5] Dr. Dandridge's most recent treatment note is dated October 14, 2016. R. 530–33.

was "disabled" once she turned fifty-five in July 2017. Pl.'s Br. 7–9 (citing 20 C.F.R. pt. 404, subpt. P, app. 2 § 202.01); *see* R. 18–19. Those regulations, not Dr. Dandridge's statements, are the reason his "opinion contain[s] *disabling* limitations." R. 17 (emphasis added).

The AC also found that Dr. Dandridge's "opinion containing disabling limitations [was] inconsistent with his very conservative treatment recommendations." R. 17 (citing R. 530–46 (Ex. 7F)). The AC may "consider the conservative nature of a [claimant's] treatment—among other factors—in judging the credibility" of subjective evidence, including medical opinions. *Dunn v. Colvin*, 607 F. App'x 264, 273 (4th Cir. 2015). Here, however, the AC relied on a single set of Dr. Dandridge's records that generally do not address Tina's left upper-extremity impairment. *See* R. 530–33 (persistent cough); R. 534–37 (urinary tract infection); R. 538–40 (annual exam); R. 543–44 (right shoulder pain). *But see* R. 538 ("She has bilateral rotator cuff strain. She's given an exercise program."). The AC did not discuss Dr. Dandridge's other records showing that Tina also received several steroid injections in her left shoulder or elbow, which Tina said provided only temporary relief. *See* R. 98–99, 493–94, 501, 503–04, 506. Even assuming repeated steroid injections are "very conservative" treatment for degenerative disc disease and tenosynovitis, *see* Def.'s Br. 11, ECF No. 15, the AC did not explain how it concluded such treatment was "inconsistent" with Dr. Dandridge's opinion that Tina could not lift more than twenty pounds.

\*\*

I take no position on whether Tina is entitled to disability benefits. On remand, the Commissioner must consider and apply the applicable legal rules to all the relevant evidence in the record; explain how any material inconsistencies or ambiguities were resolved at each critical stage of the determination; and, assuming Tina cannot prove she was disabled based on the

11

medical evidence alone, provide a logical link between the evidence the Commissioner found credible and the RFC determination.

## IV. Conclusion

For the foregoing reasons, I respectfully recommend that the presiding District Judge **DENY** the Commissioner's motion for summary judgment, ECF No. 14, **REVERSE** the Commissioner's final decision, **REMAND** the case for further proceedings under the fourth sentence of 42 U.S.C. § 405(g), and **DISMISS** this case from the Court's active docket.

### **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the presiding District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: February 22, 2021

Joel C. Hoppe
United States Magistrate Judge